UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RHONDA E. MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CAUSE NO. 2:11-CV-262 PS |
| v. ) | |
| ) | |
| PATRICK R. DONAHOE, ) | |
| Postmaster General, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Rhonda E. Mason alleges she was discriminated against when her employer, the United States Postal Service, failed to offer her a new job that would accommodate her carpal tunnel injury. She has filed this lawsuit under the Americans with Disabilities Act, 42 U.S.C. § 12101. The Postmaster General has moved for summary judgment [DE 40], arguing the Mason's claims are both procedurally and substantively flawed. For reasons I'll explain below, I agree and **GRANT** the Postmaster's motion for summary judgment.

## BACKGROUND

Rhonda Mason has been employed by the United States Postal Service since 1989.[1] In 1991 Mason developed carpal tunnel syndrome in her right hand due to her work at the Postal Service. It was a serious injury that Mason needed surgery to repair

---

[1] Unless otherwise indicated, the facts come from Defendant's Statement of Material Facts [DE 41 at 1 - 8]. Apart from certain exceptions that I will note, the Statement of Material Facts is undisputed [DE 44 at 1].

it. The surgery worked, but Mason still couldn't return to work. Various health problems — she describes them as "aches and pains" — kept Mason out of work for the next six years. At first, Mason received payments from the Department of Labor's Office of Worker's Compensation ("OWCP") because of the carpal tunnel injury. But those payments stopped in January 1992, and so from January 1992 until she returned to work in September 1997, Mason was classified as being on Leave Without Pay ("LWOP") status. This meant she remained a USPS employee, but did not receive a salary.

During this time, Mason claims that she repeatedly contacted the Postal Service asking if she could return to work [DE 44-2 ¶ 3]. She let them know that she was capable of returning, so long as the Postal Service made an accommodation for her carpal tunnel. *Id.* According to Mason, the Postal Service refused. *Id.* Mason was offered a job, but she maintains it involved the same type of repetitive motion that led to her injury so she had to turn it down. *Id.* Eventually Mason found a position that worked for her and was able to return to her Post Office, where she has continued to work without major incident.

The events that led to this lawsuit started in late 2009 when Mason contacted the Postal Service's human resources department, known as the Human Resources Shared Service Center ("HRSSC"), with a question about her retirement account. She probably regrets making the call. The question she asked is immaterial — Mason wanted to know how to redeposit some money she had taken out of the account. What is

important is that Mason's question prompted HRSSC to update Mason's retirement account information. The Postal Service has a computer system, known as the RTR, that tracks each employee's service and calculates the employee's retirement computation date. Employee benefits, like pension eligibility are keyed off of this date. Employees qualify for certain benefits based on their years of service, and their years of service are calculated using their retirement computation date. Mason had worked at the FDIC prior to starting with the Postal Service, so her retirement computation date was September 30, 1981. This means, as of January 2010, she would have had nearly thirty years of credited service. Mason claims this would have qualified her for a generous retirement buyout package [DE 44 at 5].

But, as I mentioned, Mason's question to HRSSC prompted the RTR to re-compute her service information. In doing so, the RTR took into account, apparently for the first time, Mason's extended absences from work in the 1990s. According to federal regulations, employees are only allowed six months of LWOP in a calendar year before their retirement computation date is effected. Mason had spent a lot of time on LWOP in the 1990s so, when this rule was taken into account, Mason ended up losing a total of one year, eight months, and 20 days of credited service.

The change took effect on January 2, 2010. Ten days later, HRSSC sent Mason the letter responding to her initial question about her retirement account [DE 41-3]. The letter included a Retirement Plan Correction Report notifying Mason that her retirement date had been changed. In addition, HRSSC sent out a Form 50 Notification of

3

Personnel Action on January 12, 2010 [DE 41-7]. The Form 50 is a notice form that is automatically generated any time there is a personnel action affecting an employee's salary, retirement, or benefits. Mason recalls receiving the Form 50 sometime after January [DE 41-19 at 43].

This is where things get fuzzy. According to the Postal Service, Mason contacted the Equal Employment Opportunity ("EEO") office on February 4, 2010 to complain about the change in her retirement date [DE 45-1 ¶ 4]. On February 12, she filled out an official EEO pre-complaint form. She stated that she had been discriminated against when "on January 11, 2010 [she] [r]ecived [a] personnel action changing my retirement date due to excess LWOP in 1994, 1995, 1996 and 1997." *Id.* ¶ 5. The EEO counselor investigated the complaint, and, on May 5, 2010, sent Mason a letter notifying her that the counseling process had concluded. The counselor informed Mason that if she wished to continue to pursue the claim, Mason needed to file a formal complaint with the EEO within 15 days. *Id.* ¶ 7; DE 45-4. Mason did not file a formal complaint and the claim was closed [DE 45-1 ¶ 9].

Instead, and here we return again to the realm of undisputed facts, Mason began the EEO counseling process all over again. She contacted the EEO on May 27, 2010 to let them know that she was going to be filing another discrimination charge. Her new pre-complaint was filed on June 8, 2010 and was similar to the first [DE 41-12]. In it, Mason alleged that the Post Service had discriminated against her by not crediting her for the time she spent on medical leave in the 1990s. She wrote that she had viewed her

4

online personnel file and discovered that she was not receiving credit for the time she was injured in the 1990s. She also stated that she had received a Form 50 showing that her retirement computation date had changed. She asked that the time be credited back and her retirement date be corrected.

The pre-counseling process concluded on August 23, 2010 and another Notice of Right to File letter was sent to Mason [DE 41-13]. This time, however, she chose to go forward with the formal complaint [DE 41-14]. The EEO dismissed her complaint sometime in October 2010, although the document is incorrectly dated September 13, 2010 [DE 41-15]. Mason appealed, but the appeal was dismissed as untimely on April 21, 2011 [DE 41-18]. So Mason filed this lawsuit in July 2011 [DE 1].

## DISCUSSION

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). Employment discrimination cases, while often turning on factual questions, are nonetheless amenable to summary judgment when there is no genuine dispute of

5

material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *Cliff v. Board of School Comm'r*, 42 F.3d 403, 409 (7th Cir. 1994).

Mason alleges that the Postal Service discriminated against her in two ways. First, they refused to make a reasonable accommodation for her carpal tunnel during the period in the 1990s when Mason was on LWOP status. Second, she was discriminated against in 2010 when HRSSC changed her effective retirement date from September 30, 1981 to June 20, 1983. Mason alleges that these actions violated the Americans with Disabilities Act.

There are a lot of problems with Mason's claims, but I might as well start here. The ADA does not apply to claims of employment discrimination against the federal government. *See* 42 U.S.C. § 12111(5)(B) (excluding from liability employers that are wholly owned by the United States government). Instead, Mason's claims are governed by the Rehabilitation Act, 29 U.S.C. 701, *et seq.* Mason's complaint was filed *pro se,* so it is understandable that she made this mistake. But her attorney didn't correct the error after he signed on to the case, and he persisted in it after the Postal Service pointed out the error in its opening brief. Luckily for Mason, this error is inconsequential, as the ADA and Rehab Act apply the same standards. *See*, *e.g.*, *Steffen v. Donahoe*, 680 F.3d 738, 742 n.1 (7th Cir. 2012). Since I have to look to the application of the ADA in order to determine whether a violation of the Rehab Act occurred here anyway, I will ignore this error and proceed with the analysis as if Mason had sued under the correct statute.

### A. Failure to Accommodate

Mason's primary claim is that the Postal Service discriminated against her when they failed to make a reasonable accommodation for her carpal tunnel injury in the 1990s. This claim is barred for a host of procedural reasons. First, it is very much barred by the statute of limitations. The statute of limitations for Rehabilitation Act claims are governed by the limitations period for personal injury claims in the forum state. *Untermyer v. Coll. of Lake Cnty.*, 284 F. App'x 328, 330 n.1 (7th Cir. 2008). Indiana has a two-year statute of limitations for personal injury claims. *See* Ind. Code § 31-11-2-4; *see also Allen v. Indiana Univ. Nw.*, 2:09-cv-24-JVB, 2009 WL 2245061 (N.D. Ind. July 24, 2009). The alleged failure to accommodate occurred sometime before September 1997, so this claim was brought about fifteen years too late.

Another problem is Mason did not include the failure-to-accommodate claim in her EEO complaint. That means she is barred from raising it here. As a general rule, a discrimination plaintiff cannot bring claims in a lawsuit that are not included in her EEO charge. *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000). The exception is if the new allegations fall within the scope of the EEO charge. *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). New allegations are within the scope of the original charge if the new allegations are "reasonably related" to the original claims. *See Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). At a minimum this means that the original EEO charge and the new allegations must

7

describe the same conduct and implicate the same individuals. *See Ezell*, 400 F.3d at 1046.

That's just not the case here. In her June 2010 EEO charge, Mason's only complaint was about her retirement account. She wrote:

> "On May 27, 2010, I viewed my personnel file online and the hours I was receiving OWCP are added into total (12993.05) of the RTR Employee Detail Report. I had form 50 Changes for periods I was receiving OWCP . . . I am to be credited with that time. I am being penalized for this time on OWCP. There are Form PS50 showing changes in my anniversary dates, but I was receiving OWCP."

[DE 41-12 at 1]. To translate that from bureaucrat speak to plain English, Mason complained that the Postal Service's human resources department wrongly reclassified her time off in the 1990s as time spent on leave without pay (LWOP) status rather than time off for injury (OWCP). This had the effect of changing her retirement computation date listed in the Form 50 Notification she received. As should be clear, there is no hint here about a failure to accommodate Mason's carpal tunnel in the 1990s. Nor is the accommodation claim reasonably related to the claim in the EEO charge as they involve different people and different conduct. The retirement date claim involves the HRSSC employees who calculated her service dates in 2010, whereas the accommodation claim involves her supervisors and managers at the Gary Post Office in the 1990s. Since

8

Mason didn't raise the accommodation claim in her EEO charge and it is not reasonably related to the claim she did make, the accommodation claim is barred.

There is still another procedural defect. Mason failed to exhaust her administrative remedies. A person alleging discrimination under the Rehabilitation Act must exhaust administrative remedies before bringing a lawsuit in federal court. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) ("Exhaustion is . . . a condition precedent to bringing a claim under the Act"); *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1320 (7th Cir. 1984). Federal regulations set out a number of steps that a discrimination claimant must follow before filing suit. For example, the claimant must contact the EEO within 45 days of the allegedly discriminatory action and go through a counseling process. 29 C.F.R. § 1614.105(a)(1). After the process ends, she has to file a formal complaint with the EEO within 15 days. 29 C.F.R. § 1614.106(b). Only after the EEO dismisses the claim can she file a lawsuit in federal court. *See* 29 C.F.R. § 1614.110. And the suit must be filed within 90 days of the final action by the agency. 29 C.F.R. § 1614.407(a). Mason has not presented any evidence that she complied with any of these regulations. And there is no way that she could have, since, if she had, this claim would have been resolved a decade years ago.

**B.     Retirement Computation Date Claim**

So Mason's failure to accommodate claim is out, which leaves the discrimination claim based on the recalculation of her retirement date. But there is a procedural defect here too. As I noted, the regulations required that Mason initiate contact with the EEO

9

counselor within 45 days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). Although this is not a jurisdictional prerequisite, this deadline is construed as a statute of limitations, and failure to comply with the deadline bars a plaintiff's claim. *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995); *Gray v. Potter*, 115 F. App'x 891, 893 (7th Cir. 2004). Section 1614.105(a)(2) provides several bases for extending the 45-day limit, such as lack of notice, but the burden is on the plaintiff to show that an extension is warranted. *Gray*, 155 F. App'x at 893; *McSwain v. Runyon*, 990 F. Supp. 1001, 1003 (N.D. Ill. 1998).

In this case, the allegedly discriminatory action occurred in January 2010 when HRSSC adjusted Mason's retirement computation date. Mason first contacted the EEO to complain in February 2010, well within the deadline period [DE 45-2]. But, unfortunately, Mason allowed her February EEO claim to wither on the vine. She received a Notice of Right to File Individual Complaint letter in early May 2010, which gave her 15 days to file a formal complaint to keep the claim going [DE 45-4]. For whatever reason, Mason didn't file and the matter was closed [DE 45-1 ¶ 9]. She then initiated the EEO claim that forms the basis for this suit on May 27, 2010 [DE 41-12][2]. At that point, the 45-day deadline had long passed.

---

[2] Although both EEO pre-complaints concern Mason's retirement calculation date, they are based on different documents. The February 2010 pre-complaint was based on a "Personnel Action" that Mason received in January [DE 45-2 at 1]. Presumably this is the Form 50 sent on January 12, although Mason claims not to have received that document until sometime after January [DE 41-19 at 43]. The May 2010 pre-complaint is based on Mason's online personnel file [DE 41-12 at 1]. As I'll explain, this distinction is not material.

Mason tries to argue that 45-day limit should be excused because she did not know about the allegedly discriminatory recalculation until May. She argues in her brief that she "did not receive anything definitive" about the changed retirement date until May 9th or 10th [DE 44]. First, it doesn't matter when Mason actually found out about the change, because the standard for an extension turns on whether she *reasonably should have known* that a discriminatory act occurred. *See* 29 C.F.R. § 1614.105(a)(2); *Edwards v. Donahoe*, 503 F. App'x 468, 471 (7th Cir. 2013) ("[T]he complainant need only know (or reasonably should have known) that the act in question was *possibly* discriminatory."). Second, the evidence clearly establishes that Mason should have known about the benefits change in January, and, in fact, *did* know about the change in January. I know this because she filed a pre-complaint with the EEO in early February claiming her retirement date had been changed and the change was discriminatory [DE 45-2]. So the claim that Mason didn't know about the personnel action until May is just not true, and Mason is not entitled to an extension of the 45-day deadline.

Even if this claim weren't barred for procedural reasons, summary judgment would be appropriate because Mason cannot make a prima facie case of discrimination. There are two ways prove a Rehabilitation Act claim - the direct method and the indirect method. *Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005). Under the direct method, a plaintiff must present direct and/or circumstantial evidence that points directly to a discriminatory reason for the employer's action. *See id.* Under the indirect method, a plaintiff must adhere to the

familiar burden-shifting formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kersting*, 250 F.3d at 1117.

Mason doesn't specify which method she is proceeding under, and hasn't made a showing under either. In fact, she does not even try to present evidence that the retirement date change was itself discriminatory [DE 44 at 5-7]. Instead, Mason focuses exclusively on the accommodation claim, treating the retirement date claim as derivative — the "product"— of the earlier discrimination [DE 44 at 5]. She argues that the Postal Service shouldn't be able to benefit from the past discrimination by changing Mason's retirement computation date. *Id.* at 6.

It's not clear to me what Mason means by this. If she is arguing that the retirement date claim is just a consequence of the failure to accommodate and not a separate act of discrimination, then she is out of luck. The accommodation claim is time-barred. And the fact that failure to accommodate has had recent effects, doesn't change the analysis. The Supreme Court has consistently held that, in determining when this kind of cause of action accrues, the "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (holding discriminatory acts that fall outside of the statute of limitations are time-barred, even if they relate to acts that fall within the statute of limitations). Here the allegedly discriminatory acts occurred a dozen or so years ago.

If, on the other hand, Mason maintains, as she does elsewhere in her brief, that the retirement date change was a discriminatory act in itself, then she was obligated to provide some evidence of discrimination. She did not do this, so the claim fails.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [DE 40] is **GRANTED**. The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendant stating that Plaintiff is entitled to no relief. The clerk shall treat this civil action as **TERMINATED**. All pending dates in this case are **VACATED**.

**SO ORDERED.**

ENTERED: September 5, 2014

                                          s/ Philip P. Simon
                                          PHILIP P. SIMON, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT